# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

**MARK ANTHONY HAIRSTON,**

    **Plaintiff,**

**v.**                                                    **Case No.**

**WESTLAKE CHEMICAL CORPORATION,**

**Serve:**
    **Brian L. Mims, Senior Counsel**    **JURY TRIAL DEMAND**
    **2801 Post Oak Blvd., Suite 600**
    **Houston, TX 77056**

**and**

**ROYAL BUILDING PRODUCTS, INC.,**

**Serve:**
    **CT Corporation System**
    **Registered Agent**
    **4701 Cox Road,**
    **Suite 285**
    **Glen Allen, VA 23060**

    **Defendants.**

## COMPLAINT

The above-named Plaintiff, Mark Anthony Hairston (hereinafter, "Mr. Hairston" or "Plaintiff"), by counsel, states as his Complaint against Defendants Westlake Chemical Corporation and Royal Building Products, Inc. (hereinafter, "Defendants"), the following:

### I. JURISDICTION

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by Title VII of the Civil Rights Act of 1964, as codified under 42 U.S.C. §§

1

2000e, *et seq.*, 42 U.S.C. § 2000e-5(f) ("Title VII"), and the Civil Rights Act of 1991, as amended, as codified under 42 U.S.C. § 1981, *et seq.* ("Section 1981"). *See generally* 28 U.S.C. §§ 1331, 1343(a)(4).

2. At all times relevant to the Complaint, Mr. Hairston resided in Abingdon, Virginia.

3. Defendant Royal Building Products, Inc. ("RBP") is a subsidiary of Defendant Westlake Chemical Corporation ("Westlake"), and is incorporated and does business within the Commonwealth of Virginia. Therefore, due to its contacts within the Commonwealth, RBP avails itself to the jurisdiction of this Court.

4. As the parent company of RBP, Westlake has complete and total control over all business activities of RBP. Upon information and belief, Westlake oversees and inspects RBP operations, and gains significant revenue from such RBP sales in the Commonwealth of Virginia. Westlake has extensive contacts with the Commonwealth of Virginia as a result of this activity, and has availed itself to the jurisdiction of this Court.

5. Venue is appropriate as the acts and/or omissions of Defendants from which these causes of action arise, occurred within the Western District of Virginia. *See* 28 U.S.C. § 1391(b)(2).

6. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in June of 2017. Plaintiff received a Dismissal and Notice of Rights from the EEOC dated October 31, 2017, attached hereto as **EXHIBIT A**. Plaintiff files suit within ninety (90) days of receipt of that Dismissal and Notice of Rights.

## II. THE PARTIES

7. Defendant RBP, a manufacturer and distributor of exterior building materials, was acquired by Defendant Westlake in or around August 2016. Westlake, an international manufacturer and supplier of petrochemicals and building products, is headquartered in

Houston, Texas, and maintains several North American locations.

8. Mr. Hairston is a current resident of Martinsville, Virginia, and identifies his race as Black/African-American.

9. Mr. Hairston was hired by Defendants on or about February 23, 2015, and his separation from employment occurred on or about February 21, 2017.

10. At the time of his separation from employment, Mr. Hairston was a Senior Human Resources Business Partner, and earned an annual salary of approximately $76,500. Mr. Hairston worked approximately 40 (forty) hours per week. During his employment with Defendants, Mr. Hairston was afforded health, vision, dental, and life insurance and, for a time, the use of a company car.

### III. FACTUAL ALLEGATIONS

11. Mr. Hairston was hired by Defendants on or about February 23, 2015, as a Senior Human Resources Business Partner, a position he held until his termination on or around February 21, 2017.

12. Mr. Hairston worked in Defendants' Marion, Virginia, and Bristol, Tennessee, locations on a consistent, full-time basis, and performed his duties faithfully, diligently, and with competence during the entire length of his employment with Defendants.

13. Upon information and belief, Mr. Hairston was the only salaried African American employee working at Defendants' Marion or Bristol locations.

14. Mr. Hairston always received excellent work performance reviews, met or exceeded Westlake's expectations, and never was disciplined. Any alleged performance issues were never communicated to Mr. Hairston by his supervisors during his employment with Defendants.

3

## Hairston Subjected to Hostile and Discriminatory Environment
## Replete with Distasteful Racial Comments

15. However, Mr. Hairston was subjected to hostile and discriminatory working conditions by his supervisors and colleagues, including Plant Manager John Gargaro, Operations and Plant Manager Greg Brown, Plant Engineer Randy Jacobson, and Director of Human Resources Ted Marsh, based upon Mr. Hairston's race.

16. Mr. Gargaro, Mr. Brown, Mr. Jacobson, Mr. Marsh, and other Westlake colleagues demonstrated a racially motivated discriminatory animus against Mr. Hairston and, consequently, targeted Mr. Hairston and subjected him to discrimination, harassment, and retaliation during Mr. Hairston's employment with Defendants.

17. Upon information and belief, Mr. Gargaro and Mr. Brown, in particular, were racially biased against African Americans, and treated African Americans poorly.

18. As an example, Mr. Brown informed Mr. Hairston that Mr. Gargaro "doesn't like you [Mr. Hairston] and doesn't like blacks."

19. Mr. Brown also advised Mr. Hairston that Mr. Gargaro "is prejudiced against blacks," and that Mr. Gargaro was attempting to terminate Mr. Hairston's employment because he is "a black man." Mr. Brown then laughed.

20. Upon information and belief, Mr. Gargaro intended to replace Mr. Hairston with a Caucasian female, Kim Agner, with whom Mr. Gargaro maintained a friendship.

21. Additionally, Mr. Gargaro often, and without justification or reason, referred to Mr. Hairston as "the problem," and regularly spoke poorly of Mr. Hairston within the company in an attempt to sabotage Mr. Hairston's reputation within the workplace.

22. Approximately six (6) months after Mr. Hairston was hired, Mr. Gargaro also removed Mr. Hairston's privileges to use company cars. Upon information and belief, the

4

nine (9) other local managers retained their car privileges for both company and personal use, including Mr. Gargaro.

## Additional Racist Slurs and Comments

23. Regrettably, in additional to this racially biased and discriminatory treatment, Mr. Hairston also was subjected to overt racist slurs and comments by his colleagues.

24. Appallingly, Mr. Hairston was referred to as a "Nigger" in a text message exchange between Mr. Brown and another supervisor.

25. Upon information and belief, Mr. Hairston was also regularly referred to as a "Nigger" by his co-workers and supervisors.

26. Mr. Hairston was aware of these discriminatory communications, and they caused him severe stress and added to an already abusive and hostile working environment.

## Mr. Hairston Complains But is Ignored

27. In or around August 2016, Mr. Hairston began reporting to Ted Marsh.

28. Mr. Hairston's previous supervisor, Steven Ryan, had advised Mr. Marsh about Mr. Hairston's hostile and discriminatory working environment and Mr. Marsh verbally acknowledged this to Mr. Hairston.

29. Mr. Hairston also directly informed Mr. Marsh that he was being subjected to a hostile work environment. However, Mr. Hairston's complaints were never meaningfully addressed by Mr. Marsh or anyone else. Instead, the discriminatory conduct endured by Mr. Hairston escalated.

## Even More Distasteful Racial Comments

30. Specifically, on or around December 1, 2016, while attending the annual RBP Service Awards Dinner in Bristol, Tennessee, Mr. Jacobson and Mr. Brown subjected Mr. Hairston to numerous distasteful and racist comments.

5

31. During the event, Mr. Jacobson and Mr. Brown noticed police vehicles with flashing lights outside the event venue, and told Mr. Hairston that the police "were out there for [him] [Mr. Hairston]" . . . "the black guy."

32. Mr. Jacobson and Mr. Brown further stated that "police don't like blacks," and advised Mr. Hairston that Mr. Hairston should have parked his car somewhere else, so the police would not see him upon his departure.

33. Mr. Jacobson and Mr. Brown further disturbingly stated, "they [the police] beat black people and you're black."

34. Mr. Hairston was upset and shaken by Mr. Jacobson and Mr. Brown's comments, but, because his previous complaints were ignored by Defendants, Mr. Hairston did not immediately report his colleagues' hostile and discriminatory behavior.

**Mr. Hairston Complains Again and is Threatened with Termination**

35. Eventually, on or around January 10, 2017, Mr. Hairston again discussed with Mr. Marsh the ongoing discriminatory conduct he endured. Mr. Hairston specifically complained about the racially tinged and disturbing comments to which he had become increasingly subject.

36. During this discussion, Mr. Marsh became visibly irritated and suggested that Mr. Hairston "just quit and move back home."

37. Mr. Hairston understood Mr. Marsh's comment to be an implied threat of termination if Mr. Hairston continued to complain about workplace discrimination.

38. However, Mr. Hairston calmly informed Mr. Marsh that he [Mr. Hairston] was committed to his work and simply wanted to improve his working environment.

**Mr. Hairston Retaliated Against and Terminated from Employment**

39. Mr. Marsh again refused to address Mr. Hairston's complaints. Instead, Mr.

6

Marsh terminated Mr. Hairston's employment within short proximity to Mr. Hairston's most recent complaints.

40. Indeed, on or about February 21, 2017, Mr. Marsh advised Mr. Hairston that Westlake was undergoing a "reorganization," and terminated Mr. Hairston's employment.

41. Upon information and belief, Mr. Hairston was terminated from his employment due to his race and/or in retaliation for his legitimate complaints of a racially discriminatory and hostile working environment.

42. Upon information and belief, this abrupt termination was merely a pretext to unlawful race discrimination and retaliation by Defendants, in violation of Title VII, as Defendants' engagement in a pattern and practice of race discrimination had fostered a work environment charged with discrimination and retaliation and was hostile to Mr. Hairston.

## COUNT I: CLAIM FOR TITLE VII RACE DISCRIMINATION

43. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

44. Plaintiff identifies his race as "Black"/ African-American, and is protected from race discrimination by Title VII.

45. At all times material hereto, Defendants had an obligation to maintain a work environment that was not charged with racial discrimination and hostile to Plaintiff and other minority employees.

46. Defendants violated federal law by creating and permitting a work environment to exist that was discriminatory and hostile to Plaintiff, and by wrongfully terminating Plaintiff.

47. Specifically, Defendants were openly racially biased against African Americans, treated Plaintiff poorly and less favorably than other non-minority employees, informed Plaintiff of their racial prejudice, referred to Plaintiff as a "Nigger", subjected Plaintiff to numerous distasteful and racist comments, ignored Plaintiff's complaints about workplace discrimination, threatened his employment, and ultimately terminated Plaintiff's employment, because of his race.

48. Mr. Gargaro, Mr. Brown, Mr. Jacobson, Mr. Marsh, and others were acting in the course and scope of their employment with Defendants at the time of their actions; therefore, Defendants are liable for their actions under the doctrine of *respondeat superior*. Their actions against Plaintiff were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

49. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

50. At all times material hereto, Defendants engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated and/or punitive damages.

51. Prior to Plaintiff's separation of employment with Defendants, Plaintiff was performing his work at a satisfactory level and meeting or exceeding Defendants' legitimate business expectations.

52. Any reasons cited by Defendants for Plaintiff's and termination were pretextual as Plaintiff's work performance was meeting legitimate business expectations.

53. The above-described acts by Defendants constitute race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

8

54. Plaintiff is entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT II:  CLAIM FOR TITLE VII RETALIATION

55. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

56. Plaintiff identifies his race as "Black"/ African-American, and is protected from race discrimination and retaliation by Title VII.

57. During Plaintiff's employment with Defendants, he performed his work at a satisfactory level and met or exceeded Defendants' legitimate business expectations.

58. At all times material hereto, Defendants had an obligation to maintain a work environment that was not charged with racial discrimination and retaliation and was not hostile to Plaintiff and other minorities.

59. Defendants violated federal law by permitting a work environment to exist that was discriminatory and retaliatory to Plaintiff, based upon Plaintiff's race.

60. Specifically, Defendants were openly racially biased against African Americans, treated Plaintiff poorly and less favorably than other non-minority employees, informed Plaintiff of their racial prejudice, referred to Plaintiff as a "Nigger", subjected Plaintiff to numerous distasteful and racist comments, ignored Plaintiff's complaints about workplace discrimination, threatened his employment, and ultimately terminated Plaintiff's employment, because of his race.

61. Plaintiff engaged in the protected conduct of complaining about workplace discrimination, and was subsequently targeted and retaliated against for making these complaints.

62. Plaintiff was terminated within short temporal proximity to, and in retaliation for,

9

complaining about workplace discrimination.

63. Defendants would not have targeted Plaintiff or taken the other retaliatory actions against him, but for Plaintiff's race and/or his complaints about his racially charged working environment.

64. Mr. Gargaro, Mr. Brown, Mr. Jacobson, Mr. Marsh, and others were acting in the course and scope of their employment with Defendants at the time of their actions; therefore, Defendants are liable for their actions under the doctrine of *respondeat superior*. Their actions against Plaintiff were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

65. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

66. At all times material hereto, Defendants engaged in unlawful or retaliatory practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

67. The above-described acts by Defendants constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq*. ("Title VII").

68. Plaintiff is entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT III: CLAIM FOR TITLE VII HOSTILE WORK ENVIRONMENT

69. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

70. Plaintiff identifies his race as "Black"/ African-American, and is protected from

10

race discrimination and a hostile work environment by Title VII.

71. At all times material hereto, Defendants had an obligation to maintain a work environment that was not charged with race discrimination and hostile to Plaintiff and other minority employees.

72. Defendants violated federal law by creating and permitting a work environment to exist that was discriminatory, hostile, and offensive to Plaintiff.

73. Specifically, Defendants were openly racially biased against African Americans, treated Plaintiff poorly and less favorably than other non-minority employees, informed Plaintiff of their racial prejudice, referred to Plaintiff as a "Nigger", subjected Plaintiff to numerous distasteful and racist comments, ignored Plaintiff's complaints about workplace discrimination, threatened his employment, and ultimately terminated Plaintiff's employment.

74. The conduct previously detailed was unwelcome and unlawful, and based on Plaintiff's race, as evinced by the disparate treatment Plaintiff received during his employment with Defendants.

75. The conduct was sufficiently severe and pervasive so as to alter the conditions of Plaintiff's employment and to create an abusive atmosphere. Indeed, Plaintiff was ultimately unlawfully terminated from employment due to racially discriminatory, retaliatory, and hostile conduct.

76. Mr. Gargaro, Mr. Brown, Mr. Jacobson, Mr. Marsh, and others were acting in the course and scope of their employment with Defendants at the time of their actions; therefore, Defendants are liable for their actions under the doctrine of *respondeat superior*. Their actions against Plaintiff were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

11

77. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

78. At all times material hereto, Defendants engaged in a practice or practices supporting a hostile work environment with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated and/or punitive damages.

79. The above-described acts by Defendants constitute the creation of a hostile work environment in violation Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq*. ("Title VII").

80. Plaintiff is entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT IV: CLAIM FOR SECTION 1981 RACE DISCRIMINATION

81. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

82. Plaintiff identifies his race as "Black"/ African-American, and is protected from race discrimination by Section 1981.

83. At all times material hereto, Defendants had an obligation to maintain a work environment that was not charged with racial discrimination and hostile to Plaintiff and other minority employees.

84. Defendants violated federal law by creating and permitting a work environment to exist that was discriminatory and hostile to Plaintiff and other minority employees, and by wrongfully terminating Plaintiff.

85. Specifically, Defendants were openly racially biased against African Americans,

treated Plaintiff poorly and less favorably than other non-minority employees, informed Plaintiff of their racial prejudice, referred to Plaintiff as a "Nigger", subjected Plaintiff to numerous distasteful and racist comments, ignored Plaintiff's complaints about workplace discrimination, threatened his employment, and ultimately terminated Plaintiff's employment, all because of his race.

86. Mr. Gargaro, Mr. Brown, Mr. Jacobson, Mr. Marsh, and others were acting in the course and scope of their employment with Defendants at the time of their actions; therefore, Defendants are liable for their actions under the doctrine of *respondeat superior*. Their actions against Plaintiff were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

87. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

88. At all times material hereto, Defendants engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated and/or punitive damages.

89. Prior to Plaintiff's termination, he was performing his work at a satisfactory level and meeting or exceeding Defendants' legitimate business expectations.

90. Any reasons cited by Defendants for Plaintiff's and termination from employment were pretextual as Plaintiff's work performance was meeting legitimate business expectations.

91. The above-described acts by Defendants constitute race discrimination in violation of the Civil Rights Act of 1991, as amended, 42 U.S.C. §§ 1981, *et seq.* ("Section 1981").

92. Plaintiff is entitled to all reasonable costs, including attorneys' fees, associated with

13

this matter, plus interest, pursuant to 42 U.S.C. § 1988(b).

## COUNT V: CLAIM FOR SECTION 1981 RETALIATION

93. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

94. Plaintiff identifies his race as "Black"/ African-American, and is protected from race discrimination and retaliation by Section 1981.

95. During Plaintiff's employment with Defendants, he performed his work at a satisfactory level and met or exceeded Defendants' legitimate business expectations.

96. At all times material hereto, Defendants had an obligation to maintain a work environment that was not charged with racial discrimination and retaliation and hostile to Plaintiff and other minorities.

97. Defendants violated federal law by permitting a work environment to exist that was discriminatory and retaliatory to Plaintiff, based upon Plaintiff's race.

98. Specifically, Defendants were openly racially biased against African Americans, treated Plaintiff poorly and less favorably than other non-minority employees, informed Plaintiff of their racial prejudice, referred to Plaintiff as a "Nigger", subjected Plaintiff to numerous distasteful and racist comments, ignored Plaintiff's complaints about workplace discrimination, threatened his employment, and ultimately terminated Plaintiff's employment, because of his race and/or his complaints.

99. Plaintiff engaged in the protected conduct of complaining about workplace discrimination, and was subsequently targeted and retaliated against for making these complaints.

100. Plaintiff was terminated within short temporal proximity to, and in retaliation for, complaining about workplace discrimination.

14

101.    Defendants would not have targeted Plaintiff or taken the other retaliatory actions against him, but for Plaintiff's race.

102.    Mr. Gargaro, Mr. Brown, Mr. Jacobson, Mr. Marsh, and others were acting in the course and scope of their employment with Defendants at the time of their actions; therefore, Defendants are liable for their actions under the doctrine of *respondeat superior*. Their actions against Plaintiff were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

103.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

104.    At all times material hereto, Defendants engaged in unlawful or retaliatory practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

105.    The above-described acts by Defendants constitute retaliation in violation of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981, *et seq.* ("Section 1981").

106.    Plaintiff is entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 1988(b).

**COUNT VI: CLAIM FOR SECTION 1981 HOSTILE WORK ENVIRONMENT**

107.    Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

108.    Plaintiff identifies his race as "Black"/ African-American, and is protected from race discrimination and a hostile work environment by Section 1981.

109.    At all times material hereto, Defendants had an obligation to maintain a work environment that was not charged with racial discrimination and hostile to Plaintiff

15

and other minority employees.

110.     Defendants violated federal law by creating and permitting a work environment to exist that was discriminatory, hostile, and offensive to Plaintiff.

111.     Specifically, Defendants were openly racially biased against African Americans, treated Plaintiff poorly and less favorably than other non-minority employees, informed Plaintiff of their racial prejudice, referred to Plaintiff as a "Nigger", subjected Plaintiff to numerous distasteful and racist comments, ignored Plaintiff's complaints about workplace discrimination, threatened his employment, and ultimately terminated Plaintiff's employment.

112.     The conduct previously detailed was unwelcome and unlawful, and based on Plaintiff's race, as evinced by the disparate treatment Plaintiff received during his employment with Defendants.

113.     The conduct was sufficiently severe and pervasive so as to alter the conditions of Plaintiff's employment and to create an abusive atmosphere. Indeed, Plaintiff was ultimately unlawfully terminated from employment due to racially discriminatory, retaliatory, and hostile conduct.

114.     Mr. Gargaro, Mr. Brown, Mr. Jacobson, Mr. Marsh, and others were acting in the course and scope of their employment with Defendants at the time of their actions; therefore, Defendants are liable for their actions under the doctrine of *respondeat superior*. Their actions against Plaintiff were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

115.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

16

116. At all times material hereto, Defendants engaged in a practice or practices supporting a hostile work environment with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated and/or punitive damages.

117. The above-described acts by Defendants constitute the creation of a hostile work environment in violation of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981, *et seq.* ("Section 1981").

118. Plaintiff is entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 1988(b).


WHEREFORE, Plaintiff Mark Anthony Hairston prays for judgment against Defendants Westlake Chemical Corporation and Royal Building Products, Inc., for equitable relief, compensatory, liquidated and/or punitive damages, together with prejudgment interest from the date of termination of Plaintiff's employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.


TRIAL BY JURY IS DEMANDED


Respectfully submitted,

/s/ Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330

17

Roanoke, VA 24011
Tel: 540-283-0802
thomas@strelkalaw.com
leigh@strelklaw.com
winston@strelkalaw.com

*Counsel for Plaintiff*

18