**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | |
|---|---|
| MARK ANTHONY HAIRSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:18-cv-003 |
| ) | |
| ROYAL BUILDING PRODUCTS, INC., ) | |
| ) | |
| Defendant. ) | |

**BRIEF IN SUPPORT OF
PLAINTIFF'S SECOND MOTION TO COMPEL /
MOTION FOR FINDING OF SPOLIATION**

COMES NOW Plaintiff Mark Anthony Hairston, by counsel, pursuant to Federal Rule of Civil Procedure 37, and in support of his Second Motion to Compel / Motion for Finding of spoliation, states the following:

**I. Facts**

On or around August 24, 2018, the Court entered an Order compelling Defendant to produce documents and fully answer interrogatories enumerated on page 2 of the Order. (Docket No. 45, at 2), appended hereto as **EXHIBIT A**. After the Court's Order, Defendant completed a fourth and fifth supplemental document production. Generally, the fourth document production contained general fringe benefit plan documents and Plaintiff's specific healthcare benefits. The fifth supplemental production contained specific documents related to Kim Agner, the Caucasian employee who received a promotion in Defendant's "restructuring," prior to her employment with Defendant. Further, a general spreadsheet of Ms. Agner's employment during her tenure with Defendant was produced.

Also, within the fifth supplemental document production, Greg Brown's general employment file was reduced to a spreadsheet. No ESI nor specific documents related to Ms. Agner nor Mr. Brown during their tenure with Defendant - - within the confines of Plaintiff's discovery requests and the Court's Order - - were produced, as detailed below.

## II. Discovery Deficiencies and Issues

**Request for Production of Documents (Exhibit B)**

This Court ordered Defendant to produce documents related to the following Requests for Production and Interrogatories. *See* August 24, 2018 Order Granting In Part Plaintiff's Motion To Compel [Docket No. 45]. Unfortunately, after much delay, Defendant still has not fully produced documents and communications for many discovery requests to which Plaintiff is entitled under the Order and the Federal Rules of Civil Procedure:

**Request for Production 1**: Plaintiff requested all relevant communications concerning the factual allegations of the Complaint.

Defendant failed to provide any ESI despite Plaintiff's letter proposing custodians and search terms on June 6, 2018 and the Court's August 24, 2018 Order. Defendant has produced, after the Court entered the October 22, 2018 Protective Order [Docket No. 53], specific employment documents related to Kim Agner *prior to* her hiring by Royal Building Products/Westlake Chemical Company. Defendant produced a general spreadsheet of Kim Agner's employment file *during* her tenure with Royal Building Products/Westlake Chemical Company. Defendant further produced a similar generic employment file for Greg Brown. Finally, Defendant has not produced any relevant text messages or any emails, besides RBP120-21, as ordered by the Court. Plaintiff was

informed by at least one coworker with knowledge that text messages and/or emails disparaging Plaintiff on racial and other grounds existed.

**Request for Production 2**: Plaintiff requested all documents concerning the formation and termination of the employment relationship between Plaintiff and Defendant.

Defendant provided only Plaintiff's offer letter, off-boarding checklist documents, and pre- and post-termination benefits documents. Defendant did not provide relevant ESI related to the decision to hire or terminate Plaintiff.

**Request for Production 7:** Plaintiff requested documents and ESI related to evaluations, discipline, and complaints made about Ben Adams, John Gargaro, Greg Brown, Randy Jacobson, Ted Marsh, and Stephen Ryan, all individuals who Plaintiff named as perpetuating racial discrimination and retaliation against him.

Defendant claims that there are no responsive documents to this request. In addition, Plaintiff made complaints about Messrs. Gargaro, Brown, Jacobson, and Adams to Messrs. Marsh and Ryan, his supervisor and immediate past supervisor, respectively. Defendant indicated that documents were withheld from production but failed to provide any grounds or justification for withholding these documents and/or failed to produce an accurate privilege log. Defendant produced a short email chain, dated March 24-25, 2015, in which Susan Ehrlich, a member of management, indicated Plaintiff made a complaint of racial discrimination concerning the police. *See* March 24-25, 2015 Email Chain between Susan Ehrlich and Mark Hairston (Bates labeled RBP 00120-121), attached as **Exhibit C.**

Again, Defendants were ordered to produce documents related to complaints or discipline regarding allegations of racial discrimination or racial harassment. *See* Motion to Compel Order, at 2. Plaintiff believes that other ESI existed but that proper methods to preserve such ESI were not taken given the lack of responsive documents.

**Request for Production 8:** Plaintiff requested documents and ESI related to the decision to terminate his employment.

Plaintiff believes that there are significantly more documents than what was produced. Further, Defendant failed to produce any ESI related to this request.

**Request for Production 12**: Plaintiff requested documents related to the hiring of Kim Agner, a Caucasian woman, in a senior human resources role.

Plaintiff was informed during his employment that Mr. Gargaro wanted to replace Plaintiff with Ms. Agner because she is Caucasian. Defendant produced documents related to Ms. Agner's employment *prior to* her tenure at Royal Building Products/Westlake Chemical Company and only a generic spreadsheet *during* her tenure at Royal Building Products/Westlake Chemical Company. Again, Plaintiff has not received documents related to the actual decision to hire/promote Ms. Agner into a senior human resources role, other than Defendant's statement that her hire/promotion was due to a "restructuring."

**Request for Production 16**: Plaintiff requested documents and ESI related to Greg Brown, one of Plaintiff's main tormenters.

Defendant provided a generic spreadsheet that stated Mr. Brown was "terminated." However, communications and documentation, such as Mr. Brown's termination letter, were not provided. On September 10, 2018, prior to the Court entering a Protective Order, Defendant produced a privilege log, which is attached as **EXHIBIT D.** The privilege log claims that the "investigation" that led to Mr. Brown's termination was "attorney work product," without providing sufficient grounds for Plaintiff to assess why the investigation file should be afforded attorney work product protect from

disclosure. Should Defendant have any concern about the disclosure of the investigation file, the Court's Protective Order certainly would alleviate such concerns.

**Request for Production 17**: Plaintiff requested documents and ESI related to Defendant's "restructuring," which was cited as the basis for Plaintiff "being laid off."

Defendant provided only four (4) pages of documents arguably connected with this request. Such a massive restructuring of a company, if truly the reason for Plaintiff's termination, would run much more than four pages. Defendant still has not produced documentation nor electronically stored communications related to this "restructuring." Interestingly, the data produced regarding terminations from 2015 through 2017 illustrated that thirty-four (34) employees were terminated by the reduction in force. Over eighty-five percent (85.7%) of all African American employees who were terminated in 2015 through 2017 were terminated in the reduction in force. It goes without saying that documentation relevant to the termination of thirty-four people could not likely be limited to four pages.

**Request for Production 22**: Plaintiff requested all documents used in the Equal Employment Opportunity Commission process.

Defendant only produced its position statement. Defendant likely relied on several documents and ESI to produce its position statement. Plaintiff is entitled to discover all non-privileged documents.

**Request for Production 23**: Plaintiff requested all documents and ESI relied upon to answer Plaintiff's Request for Admission and Interrogatories.

Defendant responded that there were no responsive documents in its original responses to Plaintiff's Request for Production. Again, this response shows a possible lack of good faith in the discovery process. Defendant had to have relied on documents and

ESI in order to truthfully respond to Plaintiff's discovery requests. Further, the Court ordered Defendant to produce all documents and ESI relied upon in drafting responses to Plaintiff's discovery requests.

**Request for Production 24:** Plaintiff requested all documents and ESI relied upon to formulate any defense.

Defendant stated that documents were attached. Defendant only produced 634 pages of documents, even after significantly involving the Court to obtain these documents. Defendant's assertion shows that it either has no good faith defense or shows a clear lack of good faith in the discovery process. Defendant had to have relied on documents and ESI in order to assert its defenses. In addition, Defendant continually asserts that production is forth coming. Plaintiff attempted to address this issue by getting a specific timeframe of production. Defendant simply stated that the investigation was "ongoing."

## Interrogatories (Exhibit E)

**Interrogatory 3**: Plaintiff requested Defendant to detail Plaintiff's job titles, promotions/demotions, and changes in salary.

Defendant referred Plaintiff to Defendant's document production. As detailed above, Defendant's document production is woefully inadequate. Therefore, this interrogatory does not have a complete response.

**Interrogatory 6**: Plaintiff requested the name, racial identity, disciplinary history, fringe benefits, and salary of each and every supervisory and/or human resources employee employed by Defendant between 2015 and 2017, including, but not limited to, John Gargaro, Greg Brown, Ted Marsh, Randy Jacobson, and Stephen Ryan.

Initially, Defendant did not provide responsive documents to this request. After a request from Plaintiff's counsel, Defendant produced an additional seventeen pages.

While the material seems to cover the requested information, Plaintiff himself has been omitted from this spread sheet which creates doubt as to the authenticity of the document. Plaintiff hereby requests production of a complete list as requested in the Interrogatory.

**Interrogatory 18**: Plaintiff requested Defendant to detail all factual allegations supporting its defenses.

Defendant referred Plaintiff to Defendant's document production. Again, as discussed above, Defendant's document production is quite incomplete, despite the Court's August 24, 2018 Order and October 22, 2018 Protective Order.

### III. Motion to Compel

In general, a party is entitled to any relevant, nonprivileged information in discovery. Fed. R. Civ. P. 26(b)(1); see *Herbert v. Lando*, 441 U.S. 152 (1979) (discovery rules should be accorded broad and liberal treatment). A moving party seeking to compel discovery must make a good faith effort to meet and confer with opposing counsel to attempt to resolve a discovery dispute. *Id.* at 37(a)(1). After attempting to resolve the discovery dispute or issue, the moving party may seek a motion to compel discovery for failing to produce certain requested information or producing evasive or incomplete disclosures. *See id.* at 37(a)(3)(iii),(iv) and (a)(4).

Further, Rule 26(f)(3)(C) specifically contemplates any issues surrounding ESI be included in the Discovery Plan. *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 519-20 (D. Md. 2010) (discussing parties' obligation to discuss ESI preservation and production during Rule 26(f) conference); Advisory Committee Notes to 2006 Amendments of Rule 26. The Western District of Virginia, among other courts, endorse the Sedona Conference guidelines regarding the discussion of ESI preservation and

production during the Rule 26(f) conference, at the earliest instance. *See Hanwha Azdel, Inc. v. C&D Zodiac, Inc.*, Civil Action No. 6:12-cv-0023, 2015 U.S. Dist. LEXIS 39329, at *20-*21 (W.D. Va. Feb. 18, 2015) (Ballou, J). The Sedona Conference counsels that the parties agree to ESI production and preservation methods during the Rule 26(f) conference in order to avoid Court intervention in discovery disputes. *See* 18 Sedona Conference J. 152-53.

Plaintiff engaged in the discovery process in good faith with Defendant. Plaintiff propounded reasonable discovery requests and related ESI search terms, custodians, and date ranges. In addition, Plaintiff attempted to discuss ESI preservation and production methods with Defendant. Counsel for Plaintiff and counsel for Defendant met and conferred over Defendant's discovery deficiencies in accordance with Federal Rule of Civil Procedure 37. Defendant has continually stonewalled Plaintiff's attempts to obtain discovery to which he is entitled under the Court's August 24, 2018 Order and the Federal Rules of Civil Procedure.

It is still Plaintiff's position that Defendant failed to conduct a search in good faith for discoverable evidence in this matter. Plaintiff's discovery requests certainly would lead to more than 634 pages of discovery given the scope of Plaintiff's discovery requests and the Court's Order. As discussed above, and as evidence of Defendant's bad faith, Defendant's original response to Request for Production 21 suggested a lack of documents. However, shortly thereafter, Request for Production 21 was amended and supplemented with those same documents.

Finally, Defendant was Ordered to produce a sworn writing by an officer or other corporate representative attesting that all information is accurate, and all documents have

been produced. *See* Order, at 2. Plaintiff has not received such a sworn writing, further underscoring that all documents have not bee produced, contrary to the Court's Order.

Defendant's failure to fully answer Plaintiff's discovery requests after Plaintiff's good faith attempt to resolve these issues without the Court's further involvement, supports Plaintiff's Motion to Compel.

### IV. Spoliation, Text Messages, and BYOD

As recognized in *Thompson v. U.S. Department of Housing & Urban Development*, 219 F.R.D. 93, 100 (D. Md. 2003), "[t]he failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences." Spoliation is "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Id.* (*quoting Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)); *see also Sampson v. City of Cambridge*, 251 F.R.D. 172, 179 (D. Md. 2008) (citation omitted); *Broccoli v. Echostar Commc'ns Corp.*, 229 F.R.D. 506, 510 (D. Md. 2005) (citation omitted).

Under federal law, a court's authority to levy sanctions on a spoliator ultimately derives from two main sources. First, there is the "Court's inherent power to control the judicial process and litigation, a power that is necessary to redress conduct 'which abuses the judicial process.'" *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 263-64 (2007) (*quoting Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)); *accord Thompson*, 219 F.R.D. at 100 (*quoting Silvestri*, 271 F.3d at 590 (internal citations omitted)); *see also Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (citations omitted); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (*citing Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337-38 (9th Cir. 1985)); *Flury*

9

*v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005); *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. 179, 191 (S.D.N.Y. 2007) (*citing Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05 Civ. 4837(HB), 2006 U.S. Dist. LEXIS 32211, 2006 WL 1409413, at *3 (S.D.N.Y. May 23, 2006)).

If the spoliation violates a specific court order or disrupts the court's discovery plan, sanctions also may be imposed under Fed. R. Civ. P. 37. *United Med. Supply Co.*, 77 Fed Cl. at 264, *cited* in *Sampson*, 251 F.R.D. at 178. If spoliation has occurred, then a court may impose a variety of sanctions, ranging from dismissal or judgment by default, preclusion of evidence, imposition of an adverse inference, or assessment of attorney's fees and costs. *In re NTL, Inc.* Secs. Litig., 244 F.R.D. at 191 (*citing Chan v. Triple 8 Palace, Inc.*, No. 03CIV6048(GEL)(JCF), 2005 U.S. Dist. LEXIS 16520, 2005 WL 1925579, at *4 (S.D.N.Y. Aug. 11, 2005)).

**A. The Text Message and Pre-Litigation Communications**

A key piece of evidence in this matter include text messages that regard Plaintiff using racial epithets. As provided in Paragraph 24 of Plaintiff's filed Complaint, "Appallingly, Mr. Hairston was referred to as a "Nigger" in a text message exchange between Mr. Brown and another supervisor." This other supervisor was Ben Adams. Appended to this Brief and made a part hereof as **EXHIBIT F**, is a collective document that incorporates the following:

1. Plaintiff's June 23, 2017 Certified Letter to Ben Adams, addressed to Westlake Chemical Corporation, the parent company of Defendant at Defendant's Marion facility where Mr. Adams works. As provided on page 2 of that letter:

> Mr. Hairston also was subjected to documented racist slurs and comments by his colleagues. Appallingly, Mr. Hairston was referred to as a n****r in a text message exchange between Mr. Brown and another Westlake supervisor. **UPON INFORMATION AND BELIEF, YOU HAVE A COPY OF THIS TEXT MESSAGE AND YOU ARE REQUIRED TO PRESERVE IT AND THE PHONE ON WHICH IT RESIDES AND PREVENT THE DELETION OF THE TEXT MESSAGE.**

2. Plaintiff's June 23, 2017 Certified Letter to Defendant's registered agent, Westlake Chemical Corporation's Houston Texas headquarters, and the facility in Marion where Plaintiff worked, Plaintiff sent the following:

### Preservation of Evidence

> This letter also serves to notify Westlake of its obligation to preserve all physical evidence, documents, tangible things, and electronically stored information ("ESI") potentially relevant to the issues in this matter and related to Mr. Hairston ("the Incident"):
>
> . . .
>
> Mr. Hairston also was subjected to documented racist slurs and comments by his colleagues. Appallingly, Mr. Hairston was referred to as a n****r in a text message exchange between Mr. Brown and another Westlake supervisor. Additionally, at least one email chain among Mr. Hairston's colleagues – including Mr. Hairston's direct supervisor, Ted Marsh – discusses Mr. Hairston and states, "You can take the guy out of redneck, but you can't take the redneck out of the guy." Mr. Hairston was aware of these

3. A copy of Plaintiff's June 29, 2018 filed EEOC Charge which clearly highlights the text messages referenced above and lists both Westlake Chemical Corporation and the Defendant as "Employer" of Plaintiff.

11

These documents collectively demonstrate how Defendant has had notice of the likely existence of text messages relevant to a piece of federal litigation for over a year and a half at this point.

### A. BYOD

Counsel for Defendant has stated in Court and to Plaintiff's counsel that cell phone ESI was neither searched nor preserved because the data existed on personal phones. Defendant has a "BYOD" policy and practice ("bring your own device") which permits employees of Defendant to bring their own personal electronic devices such as cell phones to work to use for work purposes. Although the Corporate Handbook in the instant matter is silent as to BYOD, it is undisputed that Defendant allowed employees to bring their own personal devices and use them at the work site. The Corporate Handbook does have a provision cited below, that is eerily analogous to this spoliation issue:

**Storage, Ownership, and Inspection**

Any e-mail messages stored or written on the computer will be considered the property of Company and are subject to review by management. Similarly, any transaction performed on a company computer and/or over the company's internet connections, whether business-related or personal, is company property and is subject to management review. Any such information on portable/laptop computers placed in the field is also considered company property. The Company is not responsible for providing or furnishing any personal information stored on a company computer at the time of

While this section does not specifically mention cell phones, it is clear that Defendant has embraced the notion that communications transmitted at the "field" including "personal" communications, are considered "property of the Company." Under such scrutiny, the text messages at hand would be considered property of the Defendant.

The Sedona Conference is a nonprofit research and educational institute, dedicated to the advancement of law and policy which regularly issues heavily researched and balanced commentary on e-discovery. Appended to this Brief and made a part hereof as **EXHIBIT G**, is a 2018 commentary published by the Sedona Conference on the

subject of e-discovery as related to workplaces which permit a BYOD practice. *See* The Sedona Conference, *Commentary on BYOD: Principles and Guidance for Developing Policies and Meeting Discovery Obligations*, 19 Sedona Conf. J. 495 (2018). As provided in the commentary:

> [T]here are three threshold issues that require special consideration when determining whether ESI on employee-owned devices is subject to discovery: (1) whether the organization has possession, custody, or control over the ESI; (2) whether the ESI is unique or duplicative of other ESI that is more readily accessible; and (3) whether discovery of the ESI is proportional.

*Id.* at 15. In the instant matter, the individuals involved had their personal electronic devices on their persons while at the workplace. Moreover, Plaintiff's supervisors were aware of the presence of these devices. Insofar, as prong (1) is concerned, Defendant had control, possession and custody of the devices, because the devices were possessed by the leadership team alleged to have terminated Plaintiff . Prong (2) is easily satisfied because, as alleged in the preservation of evidence letters, the EEOC Charge and the Complaint, the ESI is extremely unique and likely not duplicated elsewhere.

Finally, the discovery is certainly proportional under the circumstances, pursuant to prong (3). Plaintiff's counsel successfully litigated the notable e-discovery case of *Wagoner v. Lewis Gale Medical Center, LLC,* 2016 U.S. Dist. LEXIS 169129 (W.D. Va. Dec. 7, 2016), in which Judge Robert Ballou found that expensive e-discovery searches were proportional in light of a part-time employee's ADA claims. The employee had been employed for less than four months. This was the first District Court in the Fourth Circuit to address the issue proportionality in light of e-discovery. Preserving and producing

text messages is nearly *de facto* proportional given its limited nature and scope in comparison with a multi-custodian search-term based forensic search as detailed in *Wagoner*. Moreover, the numerous mailings from Plaintiff to Defendant that specifically highlighted this discrete area of ESI certainly illustrated that the evidence fell within the gambit of proportionality rendering the decision by Defendant not to seek preservation of such texts willfully violative of standards of practice. Proportionality is a concept intentionally interwoven into the federal discovery process to prevent *large and unnecessary productions*, not a discrete production such as a highlighted text message between supervisory employees.

Principle 3 of the BYOD commentary from the Sedona Conference provides, "[e]mployee-owned devices that contain unique, relevant ESI should be considered sources for discovery." *Id.* at 36 (numerous internal cites omitted). Moreover, "[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation, when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591. This matter was filed in this Court in January of 2018, but through the repeated communications of Plaintiff's counsel, Defendant had notice of the possible existence of a relevant text message personal devices in June of 2017. It is currently December of 2018, thus a year and a half has passed without effort to preserve unique, discrete, isolated, and highlighted ESI.

As of the date of this filing, Plaintiff never received notice that Defendant could not control or possess the personal devices in question other than defense counsel's recent oral statements. "If a party cannot fulfill the duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates

litigation involving that evidence." *Id.* at 591 (emphasis added); *see also, Goodman v. Praxair Servs.,* 632 F. Supp. 2d 494. 515 (D. Md. 2009), *citing Gordon Partners, et. al. v. Blumenthal (In re NTL, Inc. Sec. Litig.)*, 244 F.R.D. 179 (S.D.N.Y. 2007):

> Rule 34 "control" would not require a party to have legal ownership or actual physical possession of any documents at issue. Instead, documents are considered to be under a party's control when that party has "the right, authority, or practical ability to obtain the documents from a non-party to the action."

Again, the individuals that were highlighted as possessing this relevant ESI were supervisory employees and thus the ESI was well within the "control" of Defendant.

**Sanctions**

Federal Rule of Civil Procedure 37 grants the district court wide discretion to impose sanctions for a party's failure to comply with its discovery orders, including entry of default judgment. *See, e.g., Mutual Fed. Sav. & Loan Ass'n v. Richards & Assoc., Inc.,* 872 F.2d 88, 92 (4th Cir. 1989); *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians,* 155 F.2d 500, 504 (4th Cir. 1998). Further, district courts have the inherent power to sanction a party, including entry of default or dismissal of an action, when a party abuses the judicial process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process. *Projects Mgmt. Co. v. Dyncorp Int'l, LLC,* 734 F.3d 366, 373–74 (4th Cir. 2013)

To assess a motion for sanctions due to spoliation, the Court must consider three factors. First, the Court must consider whether the alleged spoliator had a duty to preserve the lost or destroyed evidence and whether he or she breached that duty. Second, the Court must consider whether the alleged spoliator acted culpably, which in this

contest means intentionally. Finally, the Court must consider the relevance of the lost evidence and the resulting prejudice. *First Mariner Bank v. Resolution Law Grp., P.C.*, 2014 WL 1652550, at *8 (D. Md. Apr. 22, 2014).

Here, it is clear that given the above factors, Defendant had a duty to preserve the evidence. Further, the Defendant acted culpably because the Defendant had been put on notice in June of 2017 of specific information related to the location of the unique and discrete ESI (custodians and devices). This information was within the "control" of Defendant and yet the Defendant intentionally chose to do nothing. As defense counsel indicated, the phones were for "personal use" and thus they were not searched even though the Defendant had access to do so. Finally, the relevance of such evidence in a Title VII race case bears incredible weight.

In *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620 (2d Cir. 2018), the Second Circuit Court of Appeals affirmed a multi-million-dollar sanction from the Southern District of New York against a defendant that, among other things, had not sought preservation of ESI located within personal devices. As provided by the Second Circuit:

> [T]hat ePRO did not have a software usage policy in place requiring its employees to segregate personal and business accounts or to otherwise ensure that professional communications sent through personal accounts could be preserved by the company for litigation purposes was the company's own error. ePRO cannot use that oversight as an excuse to avoid discovery, nor can it complain because the resulting and wholly foreseeable deletion of material that could well have contained relevant evidence gave rise to sanctions.

*Id*. at 629.

If spoliation has occurred, then a court may impose a variety of sanctions, ranging from dismissal or judgment by default, preclusion of evidence, imposition of an adverse inference, or assessment of attorneys' fees and costs. *Goodman*, at 505–06. Given the significance of the non-preserved evidence, the ease at which it could have been preserved, and blatant disregard for preservation, Plaintiff is confident that the Court will use proper discretion in issuing sanction.

## V. Conclusion

Plaintiff has engaged in the discovery process in good faith. Unfortunately, Defendant has failed to mirror those efforts. Plaintiff hereby asks that this Court enter an Order compelling Defendant to produce the aforementioned documents and information, granting Plaintiff attorneys' fees related to the filing of this Motion, and that the Defendant should further be sanctioned for not preserving substantially significant, yet limited, evidence within its control.

Respectfully Submitted,

**MARK ANTHONY HAIRSTON**

By: /s/ Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB # 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
(540) 283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com

*Counsel for Plaintiff*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 4th day of December, 2018, the foregoing was sent to the following attorneys for the Defendant via the Court's electronic CM/ECF system.

Yvette V. Gatling, Esq.
Joon Hwang, Esq.
Littler Mendelson, P.C.
1650 Tysons Boulevard, Suite 700
Tysons Corner, VA 22102
Tel: (703) 286-3136
Fax: (703) 373-2628
ygatling@littler.com
jhwang@littler.com

Counsel for Defendant

**/s/ Thomas E. Strelka**
Thomas E. Strelka, Esq. (VSB # 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
(540) 283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com

*Counsel for Plaintiff*